# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TERRY DEAN HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 09-09-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| PAULA MEISER,[1] P.A. LEE, and DR. | ) | |
| KENDALL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are the following motions: Plaintiff's Motion for Extension of Time to Respond to Defendants' Request for Summary Judgment (Docket No. 45), Idaho Correctional Institution (ICC) Defendants' Motion for Summary Judgment (Docket No. 36), and Defendant Eric Kendall's Motion for Summary Judgment (Docket No. 51). Having fully reviewed the record, the Court finds that the decisional process would not be significantly aided by oral argument. Therefore in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L.Civ R. 7.1(d). Accordingly, the Court enters the following Order granting the Motions for Summary Judgment.

---

[1] This Defendant's true name is Paulla Mizer.

MEMORANDUM DECISION AND ORDER  1

## PLAINTIFF'S MOTION FOR EXTENDED TIME

Plaintiff has filed a Motion for Extension of Time to Respond to Defendants' Motion for Summary Judgment (Docket No. 45).  Good cause appearing, the Motion will be granted.  Plaintiff's Response to ICC Defendants' Statement of Undisputed Facts (Docket No. 49), Objection to Summary Judgment (Docket No. 50), and Response Opposing the Defendants' Motion for Summary Judgment (Docket No. 59) are considered timely filed.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.    Introduction**

Plaintiff is now on parole, but his claims arise from his incarceration in the custody of the Idaho Department of Correction (IDOC), particularly, in the private prison known as Idaho Correctional Center (ICC).  In his lawsuit, Plaintiff alleges that Paulla Mizer, Valerie Lee, and Dr. Eric Kendall violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide adequate health care at ICC.

Plaintiff filed his original Complaint (Docket No. 3) on January 12, 2009.  On March 10, 2009, the Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, and allowed Plaintiff to proceed on his Eighth Amendment claims.  (Docket No. 5.)  Defendants Mizer and Lee answered the Complaint on May 15, 2009, and Defendant Dr. Kendall answered on May 26, 2009. (Docket No. 17 & 18.)  Each Defendant now asserts entitlement to summary judgment.

**B.      Standard of Law Governing Motions for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Material facts are those which may affect the outcome of the case.  *Id*. at 248. The evidence must be viewed in the light most favorable to the non-moving party, *id*. at 255, and the Court must not make credibility findings.  *Id*.  The Court must be "guided by the substantive evidentiary standards that apply to the case."  *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative

MEMORANDUM DECISION AND ORDER  3

evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*.

The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;

**MEMORANDUM DECISION AND ORDER 4**

the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d

1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v.

Miller*, 104 F.3d 1133 (9th Cir. 1997).

   Deliberate indifference exists when an official knows of and disregards a serious

medical condition or when an official is "aware of facts from which the inference could be

drawn that a substantial risk of harm exists," and actually draws such an inference.

*Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Differences in judgment between an

inmate and prison medical personnel regarding appropriate medical diagnosis and

treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891

F.2d 240, 242 (9th Cir. 1989).

   Mere indifference, medical malpractice, or negligence will not support a cause of

action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th

Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth

Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332,

1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been

"consistently responsive to [the inmate's] medical needs, and there has been no showing

that the medical personnel had "subjective knowledge and conscious disregard of a

substantial risk of serious injury," it is proper to dismiss a plaintiff's claims by summary

judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER  5**

The Eighth Amendment does not provide a right to a specific treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In *Estelle v. Gamble*, *supra*, Inmate Gamble suffered a back injury at work when a 600-pound bale of hay fell on him. Doctors and other medical providers at the prison prescribed rest and a variety of medications, including different pain relievers and muscle relaxers. Gamble argued that the medical providers were deliberately indifferent because they should have done more to diagnosis his back problem, such as x-raying his back. The Court disagreed, reasoning:

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. . . . The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d, at 941. But the

> question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand. That portion of the judgment of the District Court should have been affirmed.

429 U.S. at 97-98.

Similarly, in *Toguchi v. Chung*, *supra*, the Ninth Circuit underscored the difference between medical malpractice, which is not actionable under the United States Constitution, and deliberate indifference, which is an Eighth Amendment violation. Particularly, a plaintiff must show that the medical providers subjectively had knowledge of a serious risk to the plaintiff, and chose to disregard that risk. In *Toguchi*, Dr. Chung had treated Inmate Toguchi several times in the past before his untimely death in prison. The final time Dr. Chung treated him, she prescribed a course of medication that expert witnesses for the plaintiffs (Toguchi's surviving parents) opined caused a toxic level of drugs in his bloodstream, causing his death.

The Ninth Circuit, however, rejected the plaintiffs' expert witness opinions that the treating physician, Dr. Chung, had been deliberately indifferent.  To reach this result, the Court focused on what Dr. Chung knew and believed before her allegedly wrongful acts or omissions. In response to an argument that Dr. Chung should have considered the prescription drug Cogentin an excessive risk to the deceased inmate's health, the Court opined: "Because she did not believe that Cogentin use presented a serious risk of harm to Keane, her conduct cannot constitute deliberate indifference." *Id*. at 1058 (emphasis

**MEMORANDUM DECISION AND ORDER  7**

added). Similarly, the court noted,

> It does not matter whether Dr. Chung's assumptions and conclusions were
> reasonable.  Rather, so long as she was not subjectively aware of the risk
> that Keane could be suffering from a drug overdose, and disregarded that
> risk, she was not deliberately indifferent.  *Farmer*, 511 U.S. at 837,114 S.
> Ct. 1970.

*Id.* at 1060 (emphasis added). Summary judgment for Dr. Chung was thus appropriate.

## C.    Analysis

As set forth above, two elements must be satisfied in order for an Eighth
Amendment civil rights claim to survive summary judgment.  Plaintiff must bring forward
sufficient admissible evidence to show he had a serious medical need and that prison staff
were deliberately indifferent to his condition.

Plaintiff has brought forward sufficient evidence to show that he had a serious
medical need, given that his wrist problem never fully resolved, and he alleges that he has
60% permanent loss of use in his right wrist and hand.[2]  (Complaint, ¶ 20, Docket No. 3.)
However, Plaintiff has failed to bring forward sufficient evidence to show that any
Defendant was deliberately indifferent to Plaintiff's complaints of ongoing problems with
his wrist.  Evaluating the evidence in a light most favorable to Plaintiff, the most he could
show is mere negligence, which is not enough to support an Eighth Amendment claim of

---

[2]  Defendants Lee and Mizer have submitted in camera evidence that Plaintiff was
engaged in keyboarding class and drawing/art hobbycraft between March 3, 2008, and January
22, 2009, to counter Plaintiff's arguments that his hand and wrist are severely impaired.
(Defendant's In Camera Production, Docket No. 21.)  These items were not produced to Plaintiff
because Defendants state that the records are kept confidential from inmates.  Because the Court
must view the evidence in a light most favorable to Plaintiff, the Court does *not* rely on this
information as a basis for its Order, but instead uses Plaintiff's allegations of 60% permanent
impairment.

cruel and unusual punishment.  Indeed, Plaintiff himself alleges in his Complaint that his "problems have been *misdiagnosed* as 'early arthritis' absent the aid of any examination by a person qualified to diagnose this type of injury."  (Complaint, ¶ 19 (emphasis added).)

In his deposition, Plaintiff admitted that he may, in fact, have arthritis; his claim, here, is that he also may have an undiagnosed condition or problem in addition to arthritis. Speaking of a fairly recent visit with an occupational therapist who is not a defendant in this suit, Plaintiff stated in deposition:

> Q.   So the therapist that you saw at the Elks Rehab also said that you have arthritis in your wrist?
>
> A.   Yes.  I'm not saying I don't have it.  But I am saying that that ain't all that's wrong with it.

(Reply of Dr. Kendall, Exhibit, Deposition of Plaintiff, p. 5 (37:12-15), Docket No. 55.)

The Court finds and concludes there is no evidence in the record that Defendants chose a course of treatment for arthritis *in conscious disregard of a serious risk of harm* to Plaintiff.  On the record before the Court, it cannot be said that Defendants' treatment of Plaintiff "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d at 989.

The history of Plaintiff's injury and treatment before he ever received treatment from Defendants is as follows.  On December 3, 2007, prior to being incarcerated at ICC, Plaintiff sustained an injury to his right wrist while doing push-ups on the edge of his bunk at the Bingham County Jail.  His hand slipped, which resulted in the wrist being

**MEMORANDUM DECISION AND ORDER  9**

hyper-extended and badly sprained upon impact.

As part of treatment for his wrist injury, Plaintiff saw Dr. Gail E. Fields, D.O., an orthopedic specialist.  On January 3, 2008, about one month after Plaintiff's initial injury, Dr. Fields noted that Plaintiff's symptoms had improved: "The erythema has gone down. The edema has also gone down, but he has marked stiffness in all his fingers in the PIP and DIP joints, as well as the wrist."  Dr. Fields opined: "He needs to get started in some physical therapy.  We need to get him out of the splint so we can get some movement in that wrist.  I am afraid he is going to develop an RSD."[3]  The note is followed by two pages of hand and wrist exercises for Plaintiff to do.  (Plaintiff's Response to Summary Judgment Motion, Exhibit at page nos. Bingham Jail 24-26, Docket No. 59.)

On January 15, 2008, because Plaintiff was then in the legal custody of the Idaho Department of Correction (IDOC) but was being housed in Bingham County Jail, jail staff

_____

[3]  Dr. John G. Kloss, of the Idaho Hand Center, provided this information about RSD/CRPS:

> Complex regional pain syndrome (CRPS), also called reflex sympathetic dystrophy Syndrome [RSD], is a chronic pain condition in which high levels of nerve impulses are sent to an affected site.  Experts believe that CRPS occurs as a result of dysfunction in the central or peripheral nervous systems.

> CRPS most likely does not have a single cause but rather results from multiple causes that produce similar symptoms.  Some theories suggest that pain receptors in the affected part of the body become responsive to catecholamines, a group of nervous system messengers.  In cases of injury-related CRPS, the syndrome may be caused by a triggering of the immune response which may lead to the inflammatory symptoms of redness, warmth, and swelling in the affected area.

(Plaintiff's Objection to Motion for Summary Judgment, Exhibit p. 9, Docket No. 49.)

**MEMORANDUM DECISION AND ORDER  10**

sought permission from IDOC to send Plaintiff to a physical therapist.  The "Progress

Notes" indicate:

> Nursing staff contacted Dr. Fields re: pts hand and IDOC refusing pmt
> for PT.  Dr. Fields stated he would write a letter explaining the necessity of
> PT for PT's RSD and wants the pt to do rom exercises and stress ball to work
> the tendons until we can get IDOC to approve PT.

(Plaintiff's Exhibit B to Response Opposing Summary Judgment, Docket No. 59.[4])  On

January 17, 2008, Plaintiff was released into the custody of IDOC.

     1.     <u>Physician's Assistant Valerie Lee</u>

On March 7, 2008, after Plaintiff was placed in custody of the private prison, Idaho

Correctional Center (ICC) (under contract to IDOC), Defendant Physician's Assistant

Valerie Lee examined Plaintiff's wrist.  The record reflects that Plaintiff's medical file at

ICC did not contain the records of Bingham County Jail, the records of Dr. Fields, or an

order from Dr. Fields for physical therapy.[5]  (Affidavit of James R. Stoll, Docket No. 36-3;

Affidavit of Joseph Cardona, Docket No. 36-6.)  The "Progress Notes" seem to indicate

that Lee did not make a clear diagnosis from her examination on the first visit, but ordered

x-rays (all views of wrist and all views of hand), allowed Plaintiff to come to the medical

---

[4] The Bingham County Jail records indicate that, upon IDOC's refusal to authorize physical therapy, Dr. Fields immediately prescribed self-monitored physical therapy exercises. Similarly, Defendant Lee prescribed regular physical therapy exercises in the medical unit.  There is no evidence in the record suggesting that a physical therapist would have done anything differently.  In addition, there is no evidence in the record that any Defendant was involved in Plaintiff's care at the time the authorization for physical therapy was refused.

[5] Plaintiff argues either that Defendants did not have the records of Dr. Fields because of their negligence, or that Defendants were nevertheless negligent in their diagnoses.  (Plaintiff's Objection, Docket No. 50.)  However, negligence is not enough to support a § 1983 claim.

unit three times a week for hand squeezing exercises, noted that a hand squeezing ball would be ordered for Plaintiff, and prescribed Plaintiff medications (Inderal,[6] ASA,[7] and 600 mg. Ibuprofen).

On March 13, 2008, Dr. Mark Sateriale read Plaintiff's x-ray of the right hand, noting "early arthritic changes" that could be osteoarthritis or an erosive arthritis; he recommended the arthritic changes be clinically correlated.  Dr. Sateriale noted a small chip fracture in the wrist, which could be acute or chronic, as well as arthritic changes in the carpus (wrist) which could be osteoarthritis or an erosive arthritis, observing that "[c]linical correlation is needed."  (Plaintiff's Response to Summary Judgment Motion, Exhibit B, page nos. ICC Hoskins 176-77, Docket No. 59.)

On March 28, 2008, Plaintiff was again examined by Lee regarding on-going wrist pain.  Lee's diagnosis at that time was "likely RA (Rheumatoid Arthritis).[8]  (*Id*. at page no. ICC Hoskins 209.)  At this time his medication was changed from Ibuprofen to Naproxen.[9] (*Id*. at page no. ICC Hoskins 191.)

On July 4, 2008, Lee examined Plaintiff again and changed the Naproxen

---

[6] Inderal blocks the action of the sympathetic nervous system.  *See* http://www.search.medicinenet.com.

[7] ASA is special caution code indicating that a medication contains aspirin.  *See* http://www.medterms.com.

[8] Rheumatoid arthritis is an autoimmune disease that causes chronic inflammation of the tissue around the joints.  *See* http://www.search.medicinenet.com.

[9] Naproxen is a nonsteroidal anti-inflammatory in the same drug class as Ibuprofen.  *See* http://www.search.medicinenet.com.

prescription to 600 mg. of Ibuprofen.  This note also indicates that Plaintiff had a permanent lateral deviation in his right third finger due to a hand injury in 2000.  Plaintiff had shiny skin on his right fingers but less edema compared to the last visit.  (*Id*. at page no. ICC Hoskins 208.)  Lee wrote, "consider DMARD if no improvement."[10]  (*Id*.)

On August 30, 2008, Lee saw Plaintiff again, the primary purpose of which seems to have been for left hip problems.  Lee suspected osteoarthritis and scheduled a hip x-ray. She noted that the hand squeezing ball was never ordered or received per her order of March 7, 2008.[11]  Plaintiff was prescribed Prednisone,[12] Inderal, and ASA.

While Dr. Fields had noted that RSD "was the early possible diagnosis" in January 2008 (Plaintiff's Exhibit D, January 22, 2010 Letter from Dr. Gail E. Fields, Docket No. 59), and Plaintiff's symptoms at the time he was examined by Lee also could have been indicative of RSD, there is no actual diagnosis in the record that Plaintiff had or has RSD. (Plaintiff's Exhibit B, May 7, 2008 "Progress Note" of Valerie Lee, Docket No. 59.)  As noted above, there is nothing in the record suggesting that Lee had Dr. Fields' medical records.

Taking the facts in a light most favorable to Plaintiff, the Court finds that the record shows insufficient evidence that the failure to diagnose Plaintiff with RSD (the condition

---

[10]  A "DMARD" is a disease-modifying antirheumatic drug.  *See* http://www.search.medicinenet.com.

[11]  There is no evidence that failure to order the ball was not simple negligence, or that Plaintiff ever complained to Lee that the ball was not received prior to this date.

[12]  Prednisone is an oral, synthetic corticosteroid used for suppressing the immune system and inflammation.  *See* http://www.search.medicinenet.com.

MEMORANDUM DECISION AND ORDER  13

Plaintiff alleges he is suffering from) resulted from *deliberate indifference*.  Plaintiff has

not shown that Lee either knew of and disregarded a serious medical condition or that she

was aware of facts from which the inference could be drawn that a substantial risk of harm

existed and actually drew that inference.  *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Lee took several major steps to diagnose and treat Plaintiff's injury when she first

examined him, relying, in part, on x-rays showing the presence of arthritis; Plaintiff had no

firm diagnosis of RSD prior to that time (or at all); nor is there any evidence that Lee knew

of the potential issue of RSD, noted that Plaintiff's symptoms were similar to RSD, and yet

disregarded that information.  There is certainly no evidence that Lee actually drew an

inference that a substantial risk of harm existed as a result of the course of treatment she

selected.

Second, the record reflects that diagnosis of RSD is quite difficult.  Dr. Fields notes

that RSD "is really an ill defined and poorly understood syndrome that may redevelop after

a fracture or 'minor musculoskeletal injury.'"[13]  (Plaintiff's Exhibit D, January 22, 2010

Letter from Dr. Gail E. Fields, Docket No. 59).  In addition, Dr. Fields notes, "[t]he

pathology is unknown."  (*Id.*)  Dr. Fields also describes RSD as a "complex syndrome."

(*Id.*)  As noted above, the x-rays, interpreted by a physician, indicated the presence of

arthritic changes in the right hand and wrist.

---

[13]  Similarly, Dr. Kloss's information provides: "There is no specific diagnostic test for
CRPS [RSD], but some testing can rule out other conditions" [and] "[m]aking a firm diagnosis of
CRPS may be difficult early in the course of the disorder when symptoms are few or mild."
(Plaintiff's Objection to Motion for Summary Judgment, Exhibit pp. 9 & 11, Docket No. 49.)

**MEMORANDUM DECISION AND ORDER  14**

Third, Plaintiff's claim fails for lack of a causal connection between a failure to diagnose and his injury or damage.  During his stay in the jail and within thirty days of his initial injury, Plaintiff had been prescribed self-monitored physical therapy exercises by Dr. Fields, in the absence of authorization to see a physical therapist.  When Plaintiff was transferred to ICC, Lee authorized Plaintiff to continue physical therapy exercises in the medical unit three times a week.  Plaintiff has failed to show that he would have been given substantially *different* treatment had Lee diagnosed him with RSD: in addition to physical therapy exercises, Lee prescribed a sympathetic nerve blocker, several different pain killers, and a steroid.  Dr. Fields' letter indicates that, in addition to "a functional exercise program," RSD is "sometimes" treated with "transcutaneous nerve stimulators, biofeedback, thermal regulation, and a variety of medications."  (*Id*.)  Dr. Fields also states that "[w]hen all these measures fail, serial sympathic ganglion blocks with a local anesthetic have proven to be helpful."  (*Id*.)  Similarly, a letter from Dr. John D. Kloss, with attached specific information on RSD, notes: "Since there is no cure for CRPS [RSD], the goal of treatment is to relieve painful symptoms associated with the disorder. Therapies used include psychotherapy, physical therapy, and drug treatment, such as topical analgesics narcotics, corticosteroids, antidepressants, and anti-seizure drugs." (Plaintiff's Response to ICC Defendants' Statement of Undisputed Facts, p. 11, Docket No. 49.)

Plaintiff is not entitled to specific care, nor the best care possible in prison.  *Forbes v. Edgar*, 112 F.3d at  267.  Rather, he is entitled to reasonable measures to meet a

substantial risk of serious harm to him.  *Id*.  As a result of all of the foregoing, the Court

concludes that Defendant Valerie Lee is entitled to summary judgment.

       2.    <u>Defendant Dr. Eric Kendall</u>

One month after Defendant Lee's last visit with Plaintiff (about 120 days after

Plaintiff arrived at ICC), on August 4, 2008, Plaintiff saw Defendant Dr. Eric Kendall for

the first time.  Dr. Kendall examined Plaintiff for complaints of pain in the right wrist.  Dr.

Kendall's job at the time entailed examining patients with emergent complaints of injury or

illness, and he typically did not treat chronic conditions on a on-going basis.  Dr. Kendall

reviewed Plaintiff's chart and previously-taken x-rays.  (Affidavit of Eric Kendall, M.D. at

3,10, Docket No. 54.)  Dr. Kendall noted the Plaintiff's wrist was neither broken nor

dislocated.  (*Id*. at ¶¶ 2, 8.)  A physical examination revealed Plaintiff's right hand/wrist

was tender to palpitation.  (*Id*. at ¶ 3.)  Taken in a light most favorable to Plaintiff, the

record reflects that Plaintiff states that his hand and wrist were swollen during the

examination, and that his range of motion was poor.  Plaintiff does not dispute Dr.

Kendall's statement that Plaintiff had no discoloration of the skin on Plaintiff's right hand

or wrist, nor did the skin appear abnormally tight or shiny.

Dr. Kendall concurred with Lee's diagnosis of degenerative joint disease, and

ordered continuation of the treatment prescribed previously. (*Id*. at ¶¶ 3,11.)  Dr. Kendall

states that he did not examine Plaintiff again for wrist problems, but saw him for breathing

problems on November 17, 2008.

As with Lee, Plaintiff has failed to show that Dr. Kendall was deliberately

**MEMORANDUM DECISION AND ORDER  16**

indifferent to Plaintiff's condition.  Plaintiff had already been diagnosed with a chronic condition that caused pain; it is not clear that Plaintiff exhibited enough symptoms at that time for Dr. Kendall to diagnose Plaintiff differently.

In addition, nothing in the record shows that Dr. Kendall concurred with the diagnosis of degenerative joint disease as a result of deliberate indifference, meaning either he knew of and disregarded a serious medical condition or he was aware of facts from which the inference could be drawn that a substantial risk of harm existed and actually drew the inference.  *Farmer v. Brennan*, 511 U.S. at 838.  Rather, the x-rays tended to confirm the diagnosis, and Dr. Kendall noted that his primary job was to check inmates for emergent injuries and problems, rather than chronic problems.[14]

3.    Defendant Paulla Mizer

Plaintiff alleges that Defendant Paulla Mizer, a Health Services Administrator for ICC, was deliberately indifferent when she denied his request for further medical treatment. Under § 1983, a supervisor "can be held liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal citation and punctuation omitted); *see also Verser v.*

---

[14] It is unclear who referred Plaintiff to Dr. Kendall and why, rather than referring him to a chronic care provider; perhaps it was to determine whether there were any emergent causes that could be associated with his problems.  In any event, another ICC physician, Dr. Stander, also diagnosed Plaintiff's condition as arthritis.  (Plaintiff's Response to Summary Judgment Motion, Exhibit B, page no. ICC Hoskins 336, Docket No. 59.)

**MEMORANDUM DECISION AND ORDER  17**

*Elyea*, 113 F.Supp. 2d 1211, 1215-16 (N.D. Ill. 2000) (citing circumstances in which denial of grievances can trigger liability).

About a week after Plaintiff saw Dr. Kendall, Plaintiff filled out a grievance form dated August 13, 2008, indicating pain and lack of mobility in his wrist.  He asked that a specialist examine him to resolve the matter.  Defendant Paulla Mizer responded on August 15, 2008, denying the grievance, citing documentation which indicated that Plaintiff was "being treated medically according to standards and to the recommendations of ICC's staff physician."  (Affidavit of Katherine Livi, Exhibit A, page no. ICC 365, Docket No. 36-5.)  Plaintiff appealed, and the appeal was denied by both the Level 2 Examiner, Fermin Villareal and the Level 3 Examiner, Warden Philip Valdez. (*Id*.)

Plaintiff submitted a second grievance on August 15, 2008. (*Id*.)  In the grievance he requested "[t]hat someone have a qualified specialist examine me and resolve this matter." (*Id*.)  On August 21, 2008, Defendant Paulla Mizer responded to Plaintiff's grievance by stating, "[y]our grievance has been received and reviewed.  The documentation exists that you are being treated medically according to the standards and to the recommendations of ICC's staff physician. Grievance [d]enied." (*Id*.)  Again, the appeal was denied by Assistant Warden Fermin Villarreal, and Warden Valdez in September 2008.

The record reflects that Defendant Mizer had access to the following information in Plaintiff's medical records.  In August and September 2008, Plaintiff had been diagnosed with a chronic condition, resulting from his injury of less than a year earlier, December

2007.  Plaintiff had been given the following medical attention: examinations, physical therapy exercises in the medical unit, different types of pain medications, nerve blocking and steroid medications, and several sets of complete x-rays that were consistent with the diagnosis of arthritis.

Plaintiff has not shown that (1) he actually has RSD; or (2) the treatment for RSD would have been significantly different from the treatment he actually received.  Nothing in the record reflects that this administrator should have made a different decision in light of the medical records at that point in time, that she knew of and disregarded a serious medical condition, or that she was aware of facts from which the inference could be drawn that a substantial risk of harm existed and actually drew the inference.

As a result, Plaintiff has not shown that Defendant Mizer was deliberately indifferent to Plaintiff's condition.  Much like the medical records in *Estelle v. Gamble*, discussed at length above, Plaintiff's medical records showed that he was receiving consistent and varied treatment to try to determine the best way to alleviate his problems and pain.  The diagnoses were consistent with the x-rays, and RSD is a hard-to-diagnose condition.

Prison officials continued to give Plaintiff additional care throughout his incarceration.  Plaintiff subsequently received further evaluation and treatment of his hand and wrist at ICC, including further x-rays.  Dr. Lucy Dossett analyzed  x-rays on

November 13, 2009 and determined Plaintiff's condition to be osteopenia.[15]  (Affidavit of

Joseph Cardoza, Exhibits Part 2, at 104, Docket No. 36-10.)  She was able to compare

x-rays of Plaintiff's wrist taken March 3, 2008 and confirm that changes in Plaintiff's wrist

appeared to be chronic. (*Id*.)

On December 23, 2009, Plaintiff had an occupational therapy evaluation at St.

Luke's Elks Rehabilitation Center.  At that time Plaintiff stated that initial edema from the

injury subsided, but two years later he continued to have pain with motion and significant

range of motion restrictions to his wrist and digits, as well as overall weakness in the right

arm.  Josh Baker, the occupational therapist, found significant range of motion and

strength losses resulting from the two-year-old wrist injury.  Plaintiff's digits, wrists, and

forearm were nontender, and there was no numbness or tingling.  Plaintiff was given

exercises.  Baker concluded: "Due to the injury being over 2 years old, I would not expect

significant gains in both range of motion and strength for the right upper extremity."  (*Id*.,

p. 77, Docket No. 36-10.)

Plaintiff was later released on parole, and it is unclear whether he received any

further or different treatment on his own.

**D.    Conclusion**

Construing the facts in a light most favorable to Plaintiff, the Court finds and

concludes that Plaintiff has shown that he had a serious medical need due to the

---

[15]  Osteopenia is mild thinning of the bone mass, but not as severe as osteoporosis.  See
http://www.medterms.com.

pervasiveness of his injury, pain, and impairment.  However, Plaintiff has not met the Eighth Amendment test's second prong of deliberate indifference.  Similarly, in concluding that Dr. Chung was not deliberately indifferent in *Toguchi v. Chung*, the Ninth Circuit Court noted: "It does not matter whether Dr. Chung's assumptions and conclusions were reasonable . . . so long as she was not subjectively aware of the risk."  391 F.3d at 1060.  Here, the bottom line is that the record contains insufficient evidence to support a finding or conclusion that Defendants exhibited deliberate indifference, given the course of treatment shown in the record.

Neither has Plaintiff shown that he, in fact, has a condition in addition to his present diagnosis or that he would have received significantly different treatment had another diagnosis been given.  As a result, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment cruel and unusual punishment claims.  The Court makes no findings on whether Defendants were negligent, as such a finding is not relevant to an Eighth Amendment claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Extension of Time (Docket No. 45) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the parties' objections and requests to have portions of the record stricken are DENIED.  The Court has viewed the facts and evidence presented in a light most favorable to Plaintiff, as well as in a liberal manner to account for Plaintiff's pro se and in forma pauperis status, taking into consideration that

Plaintiff would be able to call Dr. Fields and Dr. Kloss to testify consistently with their letters and attachments that have been provided by Plaintiff.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 36) is GRANTED as to Plaintiff's claims against Paulla Mizer and Valerie Lee.

IT IS FURTHER HEREBY ORDERED that Defendant Dr. Eric Kendall's Motion for Summary Judgment (Docket No. 51) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Complaint is DISMISSED with prejudice.

DATED:  **June 21, 2010**

Honorable Edward J. Lodge
U. S. District Judge